# DEPARTMENT OF BUSINESS REGULATION, DIVISION OF FLORIDA LAND SALES, etc. v PINNACLE PORT COMMUNITY ASSOCIATION, INC.

Case No. 85-4274

State of Florida, Division of Administrative Hearings

October 20, 1986

## APPEARANCES OF COUNSEL

**John C. Courtney,** Deputy General Counsel, Department of Business Regulation, for petitioner.

**Michael Reichman** for respondent.

**Marshall Conrad** for intervenors Logan C. Wade, et al.

## OPINION

WILLIAM R. CAVE, Hearing Officer.

## RECOMMENDED ORDER

Pursuant to notice, the Division of Administrative Hearings, by its duly designated Hearing Officer, William R. Cave, held a public hearing in the above-styled case on August 26, 1986, in Tallahassee, Florida. The issue for determination is whether the Respondent exceeded its authority under Sections 718.111(4), (6), and 718.115(1), (2), *Florida Statutes* (1983), by imposing and collecting a special assessment from Pinnacle Port unit owners for the purpose of contributing financially to a joint effort with certain other land owners in the Pinnacle Port area to conduct environmental and engineering studies and take other actions directed to obtaining a stabilized channel at Phillips Inlet suitable for navigation by recreational boats between Lake Powell and the Gulf of Mexico.

By stipulation, Joint Exhibits 1 through 7 and the transcript of the posthearing deposition of Randall C. Chandler were received into evidence. No testimony by witnesses was presented by the parties at the hearing.

The parties submitted posthearing Proposed Findings of Fact and Conclusions of Law. A ruling on each proposed finding of fact has been made as reflected in the Appendix to this Recommended Order.

## FINDINGS OF FACT

Upon consideration of the Joint Prehearing Stipulation, the following relevant facts are found:

(1) At all times material hereto, Pinnacle Port Community Association (hereinafter referred to as PPCA) has been a not-for-profit corporation created under Chapter 617 *Florida Statutes*, and was the association, as defined in Section 718.103(2), *Florida Statutes*, which operated the four separate condominiums which together constitute the Pinnacle Port Resort.

(2) The Pinnacle Port Resort is located in Bay County, Florida and consists of four separate residential condominiums, identified as Phases I-A, I-B, I-C, I-D, and together these condominiums have a combined total of 408 units.

(3) Although each of the above condominiums was created by a separate recorded declaration of condominium, the declarations are, in all respects material to this proceeding and for all time periods relevant hereto, identical to the declaration for Phase I-B received into evidence as Joint Exhibit I.

(4) The Pinnacle Port Condominiums are located on a pie-shaped

236

parcel of property which is bordered by the Gulf of Mexico on the south and there is a large lake, known as Lake Powell, located a short distance to the north of the condominium property. Immediately to the west of the condominium property, on land owned by a third party, Avondale Mills Corporation, there is a narrow channel, known as Phillips Inlet, that connects the Gulf of Mexico to Lake Powell.

(5) Because of fluctuating water levels in the channel and tidal action which regularly causes some shifting of sand around the channel, the current inlet does not provide trustworthy year round navigation for use by recreational boats between Lake Powell and the Gulf of Mexico.

(6) During 1983, several individuals owning land adjacent to Lake Powell, including Avondale Mills Corporation and certain unit owners at Pinnacle Port, decided to work together to investigate the possibility of stabilizing the inlet in order to provide a year round navigable channel between Lake Powell and the Gulf of Mexico.

(7) In March of 1984, the above land owners formed a not-for-profit corporation, known as Lake Powell Improvement Corporation, and through individual financial contributions by the members of this corporation began developing plans and conducting studies on the feasibility of stabilizing the Phillips Inlet.

(8) In May of 1984, the board of directors of Respondent adopted a resolution supporting the efforts of the Lake Powell Improvement Corporation and a non-binding straw vote of Pinnacle Port unit owners was conducted by the board of directors. The results of this vote were 232 votes in favor, 32 votes opposed, 6 votes requesting additional information and 138 unit owners did not respond. A true and correct copy of the correspondence which was sent to unit owners and representative samples of ballots returned from unit owners was received into evidence as Joint Exhibit 3.

(9) On or about August 11, 1984, at a meeting of the Respondent association, a majority of the voting interests present at the meeting for each of the four Pinnacle Port Condominiums approved a resolution "to participate in the stabilization of Phillips Inlet at the cost of no more than an average of $700.00 per unit." The resolution, which would authorize assessments in the total amount of $285,600.00, was passed by a vote of 179 votes in favor, of which 108 votes were by proxy; 81 votes against, of which 36 votes were by proxy; and 2 abstentions. The association is comprised of 408 members entitled to vote, in person or by proxy, and at least 205 members must be present, in person or by proxy, at a meeting of the association to satisfy quorum requirements.

237

(10) As part of the above resolution, the unit owners were advised that up to 50% of the proposed assessment would be used to obtain governmental permits required prior to beginning construction activities to stabilize the inlet and 50% of the assessments collected, plus any remaining funds collected previously for permitting purposes, would be used later for construction of the stabilized inlet if the governmental permits were granted.

(11) Based on the August 1984 resolution, the association has assessed as a common expense approximately $142,000.00 from unit owners and has contributed approximately $110,792.00 of these funds to the Lake Powell Improvement Corporation. In addition, the association is currently holding approximately $14,823.00 as interest on the funds collected for the Phillips Inlet projects.

(12) The Respondent has no written or formal agreement with Lake Powell Improvement Corporation. The funds were contributed to that corporation with the understanding that they would be used to conduct environmental and engineering studies and take other similar steps to obtain governmental permits which are necessary as a prerequisite to constructing the stabilized inlet. Respondent alleges that all of the funds spent have either been paid to Lake Powell Improvement Corporation or to third parties performing professional services for that corporation and that these funds have in fact been used to conduct environmental studies and to take other steps to obtain the necessary governmental permits. The Petitioner and the Intervenors do not dispute this statement in this proceeding.

(13) If the necessary governmental permits can be obtained, Lake Powell Improvement Corporation intends to dredge a new channel adjacent to the existing channel at Phillips Inlet and located on property owned exclusively by Avondale Mills Inc. The exact location of the proposed channel on the Avondale Mills property has not yet been determined. The Respondent expects the channel to be located approximately as shown on the maps included in the joint application filed with the various agencies which have jurisdiction to issue the necessary permits. A true and correct copy of this joint application was received into evidence as Joint Exhibit 2.

(14) In order to complete the proposed channel, it will be essential that permits be obtained from the Florida Department of Natural Resources and the Florida Department of Environmental Regulation and the United States Army Corps of Engineers.

(15) Although Lake Powell Improvement Corporation filed a joint application with both the above agencies in October of 1985, the permits have neither been granted nor denied.

238

(16) At the time of the August 1984 resolution, and continuing to the present, the property upon which the stabilized inlet is proposed to be constructed was not a common element for any of the Pinnacle Port Condominiums and the Respondent-Association does not have any contractual or property interest, existing or contingent, in this property.

(17) Although no agreement has previously been entered into between the members of Lake Powell Improvement Corporation concerning the future maintenance of the proposed channel, it is contemplated that an agreement will be entered into prior to the actual construction of the channel. The Respondent further contemplates contributing up to one third of the cost of maintenance, contingent upon unit owner approval, through further assessments against the unit owners.

(18) If the governmental permits applied for are granted and the inlet is constructed and maintained to a depth and width as proposed in the permit applications, the Pinnacle Port unit owners and their guests with boats, either docked at the Respondent's pier or launched at the boat ramp in Lake Powell, will have convenient access to the Gulf of Mexico. There are no existing boat ramps, piers, or docks located along the Gulf of Mexico or Pinnacle Port property.

(19) The Pinnacle Port condominiums have a rental program which advertises and rents owner's units on both a short and long term basis for owners who so desire. At the present time, 240 units participate in this rental program and an unknown number of additional owners occasionally rent their units independently.

Based on the evidence produced at the hearing and the testimony of Randall Clark Chandler, the following finding of fact is made:

(20) Although it is reasonable to expect that the planned stabilization of Phillips Inlet would provide recreational benefit to some unit owners and might help to make the units at the resort more marketable, factors affecting the relative costs and benefits of the project (such as, whether necessary governmental permits are granted; the amount of future assessments will be imposed against units to pay for construction and maintenance costs of the inlet; the possible imposition of restrictions and restrictive covenants on the use of the inlet or the adjoining lands; the effect of the inlet on water quality; and future market conditions are speculative at this time and make it impossible to quantify the value of the stabilization project or even to conclude that the project will clearly or substantially benefits unit owners.

## CONCLUSIONS OF LAW

Respondent is the association, as that term is defined in Section

718.103(2), *Florida Statutes*, for the four Pinnacle Port Condominiums and, as such, is subject to regulation under Chapter 718, *Florida Statutes*.

The Division of Administrative Hearings has jurisdiction over the parties to, and the subject matter of, this proceeding. Section 120.57(1), *Florida Statutes* (1985).

Section 718.501(1)(d) 2. and 4., *Florida Statutes* authorizes the Respondent to impose civil penalties and require the performance of affirmative relief in response to violations of Chapter 718, *Florida Statutes*, commonly referred to as the "Condominium Act".

Condominiums and the associations which govern them are creates of statute possessing only those powers granted them by law. *Towerhouse Condominium In. v. Millman*, 475 So.2d 674, 676 (Fla. 1985). These powers may include actions authorized under the appropriate corporate act, either chapter 617 or 607 of the Florida Statutes, and powers provided by the declaration of condominium or association bylaws but, such powers must be exercised in a manner that is consistent with the provisions of the Condominium Act. Id. at 676; Section 718.111(2), *Florida Statutes*.

The authority to collect assessments for non-condominium property, such as involved in the present case, is specified in Section 718.114, *Florida Statutes*, which provides:

An association has the power to enter into agreements, to acquire leaseholds, memberships, and other possessory or use interests in lands or facilities such as country clubs, golf courses, marinas, and other recreational facilities. It has this power whether or not the lands or facilities are contiguous to the lands of the condominium, if they are intended to provide enjoyment, recreation, or other use or benefit to the unit owners. All of these leaseholds, memberships, and other possessory or use interests existing or created at the time of recording the declaration must be stated and fully described in the declaration. Subsequent to the recording of the declaration, the association may not acquire or enter into agreements acquiring these leaseholds, memberships, or other possessory or use interests except as authorized by the declaration. The declaration may provide that the rental, membership fees, operations, replacements, and other expenses are common expenses and may impose covenants and restrictions concerning their use and may contain other provisions not inconsistent with this chapter.

Although no specific agreements or projects are mentioned therein,

240

the Respondent's Articles of Incorporation, specifically Article IV(b)(12), adopted much of the above general enabling language by authorizing the Respondent:

[t]o acquire fee simple title to, to lease, acquire memberships or acquire other possessory or use interest in and to operate lands and facilities, including but not limited to swimming pool, parking areas, condominium units consisting of recreational facilities, sewage treatment facilities, marinas, and other recreational facilities whether or not contiguous to the lands of any condominium operated by the association intended to provide for the enjoyment, recreation or other use or benefit of the members, or a substantial number of the members of the association.

The collection of the assessment for the Phillips Inlet project was inconsistent with the purposes specified under Section 718.114 *Florida Statutes*, therefore exceeded the Respondent's authority in violation of Section 718.111(4)(6) & 718.115(1) & (2), *Florida Statutes* (1983).

The assessment authority provided by the above statute is admittedly broad but, nevertheless, clearly contemplates the acquisition of some clear right or interest to land or facilities for the recreational use or benefit of association members. The statute contemplates such things as leasing a marina or obtaining memberships for unit owners in a country club or golf course. By contrast, in imposing the assessments in the present case, the Respondent has obtained no discernable interest, contractual or otherwise, for its members. There is no lease, no contract, no agreement of any sort granting unit owners any rights with respect to the proposed inlet. In fact, there is no guarantee that the inlet will ever be built and, if it ever is, there currently is no agreement as to how maintenance will be paid for and what use rights owners at Pinnacle Port will enjoy. Instead, the Respondent is using the assessment collected from its members to participate, along with other parties, in a highly speculative joint venture. By making financial contributions to a third party, the Respondent hopes that one day—if government permits are issued, if funding for construction and maintenance of the canal is feasible, and if the third party owning the land upon which the canal will be constructed is so inclined—unit owners at Pinnacle Port will have free access to the Phillips Inlet. Without the protections of this statute, the potential for abuse of the Respondent's power to collect assessments would be clear. Unit owners would be faced with a choice of possible foreclosure or contributing to a project undertaken by the Respondent which could carry enormous costs for construction and annual maintenance costs. The purpose of this assessment is clearly inconsistent with the terms of Section 718.114, *Florida*

*Statutes*, and the assessment is therefore invalid. *Cf. Towerhouse* at page 677.

Even if the nature of the assessment was not improper, Respondent has failed to amend its condominium documents to exercise its authority under Section 718.114, *Florida Statutes*. Although the Respondent's Articles of Incorporation authorize certain general expenditures, the original declaration fails to make any specific mention of the Phillips Inlet project and makes no provision to fund this activity through common expenses. Under the terms of the above statute, unit owners are entitled to know the purposes for which assessments may be collected. Where, as here, the original declaration fails to fully describe the assessments for which unit owners will be liable, the unit owners are likewise entitled to vote and decide whether to amend the declaration to authorize such assessments. Section 718.114, *Florida Statutes*. Since there is no evidence to suggest that this was done in the present case, the Phillips Inlet assessment would be invalid.

## RECOMMENDATION

Based upon the Findings of Fact and Conclusions of Law recited herein, it is RECOMMENDED that: (1) Respondent immediately cease and desist any further collection of assessments based on the August, 1984 resolution at issue herein and immediately obtain and refund to unit owners, on a pro rata basis, any monies in its possession which were previously collected under this assessment; (2) Respondent refund, on a pro rata basis, all interest on the funds previously collected for the Phillips Inlet project and; (3) Respondent, in the future, strictly comply with the provisions of Chapter 718, *Florida Statutes* and any future violations of the statutes at issue here shall be considered as a basis for aggravating civil penalties should administrative action be necessary in the future.

Respectfully submitted and entered this 20th day of October, 1986, in Tallahassee, Leon County, Florida.